■ SANDRA CROOTE-FLUNO, Respondent, v CHARLES A. FLUNO, Appellant. [734 NYS2d 298] —Spain, J. Appeal from a judgment of the Supreme Court (Marinelli, J.), ordering, *inter alia*, equitable distribution of the parties' marital property, entered July 19, 2000 in Albany County, upon a decision of the court.

The parties were married in 1988 and separated in December 1998; they have no children. In January 1999, they executed a separation agreement with the help of a local mediation service and plaintiff filed the agreement in the Schenectady County Clerk's office. Shortly thereafter plaintiff commenced an action for divorce citing cruel and inhuman treatment. Defendant filed an answer and a counterclaim also based on cruel and inhuman treatment and challenged the validity of the

separation agreement alleging unconscionability, fraud and duress. At trial, defendant withdrew his counterclaim and consented to plaintiff obtaining a divorce on the ground of cruel and inhuman treatment, and Supreme Court heard evidence with respect to the validity of the separation agreement and equitable distribution. Thereafter, the court issued a judgment dissolving the marriage and distributing the marital assets in accordance with the provisions of the separation agreement. Defendant appeals.

We affirm. "Separation agreements are held to a higher standard of equity than other contracts and may be set aside if manifestly unfair to one spouse because of overreaching by the other" (*Vandenburgh v Vandenburgh*, 194 AD2d 957, 958 [citation omitted]). However, our review of separation agreements should be "exercised circumspectly, sparingly and with a persisting view to the encouragement of parties settling their own differences in connection with the negotiation of property settlement provisions" (*Christian v Christian*, 42 NY2d 63, 71-72). An unconscionable agreement is one which " 'no [person] in his [or her] senses and not under delusion would make on the one hand, and [which] no honest and fair [person] would accept on the other' " (*id.*, at 71 [internal quotation marks omitted], quoting *Hume v United States*, 132 US 406, 411). To be unconscionable, an agreement must "shock the conscience" (*Mandel v Liebman*, 303 NY 88, 94); "[h]owever, an agreement will not be set aside as unconscionable simply because it might be improvident" (*Clermont v Clermont*, 198 AD2d 631, 632, *lv dismissed* 83 NY2d 953). An unequal division of marital assets in a separation agreement is not determinative of the issues of unconscionability, fraud or overreaching (*see, Hallas v Moule*, 252 AD2d 767, 768; *Skotnicki v Skotnicki*, 237 AD2d 974, 975).

Here, the separation agreement contains clear explanations of the difference between marital and separate property, lists the factors that would be considered in an equitable distribution of marital property and maintenance, and advises each party of the right to "independent legal counsel." It also contains a clause stating that the parties have each made their own inquiries into the financial status of the other and are fully informed of their respective financial conditions, and that the agreement is not the product of fraud or duress. Finally, the agreement states that in the event of divorce, the parties shall be fully bound by all of its provisions, and its provisions shall be incorporated but not merged into the judgment of divorce.

While it is evident that plaintiff receives more of the marital

property than defendant under the agreement, plaintiff assumed the debt associated with that property. The agreement specifically provides that plaintiff receives the horse farm owned by the parties, along with the horses, dogs and most of the equipment, the rental property owned by the parties in the Town of Rotterdam, Schenectady County, a 1989 Chevrolet pickup, a 1990 Honda Accord automobile, any accounts and investments in her name, her State employee pension, and her own deferred compensation plan. Defendant receives a 1988 Chevrolet Cavalier automobile, any accounts and investments in his own name, and his own employee pension and deferred compensation plan. Notably, defendant also receives, in addition to the assets listed in the separation agreement, a baseball card collection and various items of personal property, including some of the equestrian equipment. Each party agreed to be responsible for his or her own medical expenses and counsel fees. Plaintiff agreed to assume sole responsibility for the loan on a horse trailer purchased by the parties, the home equity loan and a promissory note associated with the Rotterdam house, as well as the mortgage and all costs associated with the horse farm.

Defendant's testimony, offered in support of disregarding the separation agreement, was that he was depressed, plaintiff allegedly promised to reconcile, inducing him to sign the agreement, and he lacked knowledge of plaintiff's financial condition. He also questioned debts assumed by plaintiff and the circumstances surrounding the negotiation and execution of the separation agreement. However, defendant's testimony was countered either by the language of the separation agreement or by conflicting testimony, raising credibility issues clearly resolved in favor of plaintiff by Supreme Court. Tellingly, the separation agreement contained a provision advising each party of his or her right to consult "independent legal counsel," and the evidence demonstrated that while plaintiff consulted an attorney, defendant failed to do so, undermining any claim that he was not aware of his rights in that regard. The fact that a party is not represented by an attorney in connection with the negotiation and execution of a separation agreement is not fatal to its enforceability, especially where that party makes a conscious decision not to seek the assistance of counsel (*see, Lavelle v Lavelle*, 187 AD2d 912; *Zambito v Zambito*, 171 AD2d 918, 919, *appeal dismissed* 78 NY2d 1125; *Buffett v Buffett*, 166 AD2d 819, 820). There is ample evidence in the record to support Supreme Court's rejection of defendant's challenges to the separation agreement.

Next, we reject defendant's assertion that reversal is

required because Supreme Court did not have his attorney's misdelivered submissions prior to rendering its findings and conclusions. Notably, defendant's findings of fact and conclusions of law were due to be submitted to the court by March 3, 2000, and defendant's counsel received repeated notices that the papers were overdue, ultimately warning that if the papers were not received by June 30, 2000, the court would base its decision on plaintiff's papers alone. Although defendant's papers were assertedly hand delivered to the office of the Clerk of the Supreme and County Courts, Albany County, on June 30, 2000, the court apparently did not receive any papers until after it executed the matrimonial judgment on July 6, 2000 when defendant's counsel sent copies on August 15, 2000. The court subsequently refused to revise the judgment, and we discern no error.

First, Supreme Court gave effect to the separation agreement which was the primary focus of defendant's belated submissions and, thus, had no occasion to consider the equitable distribution factors set forth in Domestic Relations Law § 236. In addition, an examination of the missing papers—included in the record on appeal—fails to reveal any significant evidence or argument that was not already heard by the court or submitted in earlier papers. While Supreme Court could have amplified its reasoning in its decision, the court incorporated the separation agreement into the judgment, necessarily rejecting defendant's claims and nothing in the record warrants a reversal of that judgment.

Mercure, J. P., Carpinello, Mugglin and Rose, JJ., concur. Ordered that the judgment is affirmed, without costs.