■ GIOVANNA B. GARNER, Respondent, v ANDREW W. GARNER, Appellant. [848 NYS2d 741]—

Carpinello, J. Appeal from a judgment of the Supreme Court (Breen, J.), entered October 14, 2005 in Warren County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.

In November 1998, after 13 years of marriage which produced four children, defendant disclosed to plaintiff that he was addicted to certain drugs and that he had had an extramarital affair earlier in their marriage. At this time, the parties agreed to stay married, but also entered into a postnuptial agreement in the event they eventually divorced. In such an eventuality, the agreement contained provisions detailing the division of separate and marital assets, as well as defendant's child support and maintenance obligations. It further provided that defendant would maintain existing life insurance for the benefit of plaintiff and the children.

Five years later, after defendant's disclosure of another extramarital affair, plaintiff commenced this action for divorce and to enforce the postnuptial agreement. In the context of this action, defendant sought an order declaring the postnuptial agreement null and void which, following a hearing, was denied. Ultimately, Supreme Court granted plaintiff a divorce and defendant now appeals from that judgment.

Defendant's primary argument on appeal centers on the validity of the parties' postnuptial agreement, which he claims

was the product of duress and overreaching. Since the record does not support defendant's contentions, we affirm the judgment. Indeed, the record reveals that defendant himself suggested the idea of such an agreement and dictated many of its terms. Plaintiff found a lawyer to draft it by consulting the yellow pages, defendant read the agreement as drafted by this lawyer and indeed made handwritten changes before signing it (*see Tremont v Tremont*, 35 AD3d 1046, 1047-1048 [2006]). Moreover, although advised to seek independent counsel, he declined to do so (*see id.*; *Croote-Fluno v Fluno*, 289 AD2d 669, 671 [2001]; *Buffett v Buffett*, 166 AD2d 819, 820 [1990]). Thereafter, in furtherance of its terms, he deeded the marital residence to plaintiff, changed ownership on the life insurance and never sought relief from it until plaintiff sued him for divorce five years later (*see McLean v Balkoski*, 125 AD2d 234, 235-236 [1986]; *Stoerchle v Stoerchle*, 101 AD2d 831, 832 [1984]).

While defendant claims that he was under duress when he signed the agreement because he feared losing his marriage and children, we note that the threat of a divorce action by plaintiff, which was her lawful right to commence, does not constitute duress (*see Lounsbury v Lounsbury*, 300 AD2d 812, 815 [2002]; *Lyons v Lyons*, 289 AD2d 902, 904 [2001], *lv denied* 98 NY2d 601 [2002]; *see also Colello v Colello*, 9 AD3d 855, 858 [2004]). To the extent that defendant also claims that drug withdrawal symptoms at the time he entered into the agreement "compromised" his state of mind, notably absent from the record is any medical proof to support this allegation (*see Lyons v Lyons, supra*; *Giustiniani v Giustiniani*, 278 AD2d 609, 611 [2000], *lv denied* 96 NY2d 706 [2001]). On this point, we find it particularly significant that defendant made amendments to the agreement before he signed it (*see Lounsbury v Lounsbury, supra*). As to defendant's claim that he lacked independent counsel, we note that the agreement itself encouraged him to seek the assistance of counsel, but he opted not to do so. Moreover, in the absence of any evidence of duress, overreaching or unconscionability, this factor is an insufficient ground upon which to void the agreement (*see Rodriguez v Rodriguez*, 11 AD3d 768, 770 [2004]; *Lounsbury v Lounsbury, supra*; *Croote-Fluno v Fluno, supra*).

Finally, we are unpersuaded that the agreement is unconscionable. As recently noted by this Court, "[a]lthough courts carefully scrutinize marital agreements based on the fiduciary relationship of the parties, an agreement is not unconscionable merely because some terms may seem improvident; it must shock the conscience to be set aside" (*Tremont v Tremont*, 35

AD3d at 1048; *see Lounsbury v Lounsbury*, 300 AD2d at 814; *Croote-Fluno v Fluno, supra*). Here, even the combined amount of child support and maintenance that defendant, a physician, agreed to pay was less than his presumptive level of child support alone under the Child Support Standards Act (*see* Domestic Relations Law § 240 [1-b]). Moreover, while he transferred all interest in the marital residence to plaintiff, she has physical custody of the children and the residence was encumbered with a sizeable mortgage for which she was responsible (*see Lounsbury v Lounsbury, supra*). Finally, while defendant complains about his lifetime obligation to pay life insurance premiums and the potential future cost of same, we note that these policies were not new obligations created under the agreement, but had been purchased during the marriage and defendant, with full knowledge of his own financial status, simply agreed to continue to maintain them. Additionally, he failed to offer any proof establishing the amount of these future premiums or that he would be unable to afford same (*see Giustiniani v Giustiniani, supra*). In short, the agreement does not shock the conscience and should be enforced.

The parties' remaining contentions are either academic or without merit.

Crew III, J.P., Peters, Spain and Mugglin, JJ., concur. Ordered that the judgment is affirmed, without costs.